IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JACK THOMAS, | ) | CIVIL NO.  07-00251 JMS/LEK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT AND |
| | ) | REMANDING STATE LAW |
| COUNTY OF HAWAII; JAY | ) | CLAIMS |
| KIMURA; JEFFERSON R. | ) | |
| MALATE; and DOES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND REMANDING STATE LAW CLAIMS

Plaintiff Jack Thomas ("Plaintiff") alleges that Defendants County of Hawaii ("County"), Jay Kimura ("Kimura"), and Jefferson R. Malate ("Malate") (collectively, "Defendants") improperly filed a criminal charge against him for violating a Temporary Restraining Order ("TRO") that a judge in a civil action had previously dismissed.  Plaintiff currently asserts claims pursuant to 42 U.S.C. § 1983 for violation of Plaintiff's Fifth and Fourteenth Amendment rights, and state law claims of malicious prosecution and abuse of process.

Currently before the court is Defendants' Motion for Summary Judgment on Plaintiff's § 1983 claim, in which they argue that Malate and Kimura

have absolute immunity for their actions.  Based on the following, the court

GRANTS Defendants' Motion for Summary Judgment on Plaintiff's

§ 1983 claim and REMANDS Plaintiff's state law claims.

## I. <u>BACKGROUND</u>

### A.    **Factual Background**

This action stems from Defendants' handling of Plaintiff's disputes

with his neighbor, Malcolm Chung.  Both Plaintiff and Chung obtained TROs

against each other, and later, Chung made a civil complaint that Plaintiff violated

the terms of Chung's TRO on March 26, 2004 when Plaintiff walked near Chung's

work place to visit a friend.  *See* Pl.'s Ex. 19(a), at 23-24, 36-37.  On May 11,

2004, State of Hawaii District Court of the Third Circuit Judge John P. Moran

found that Chung had not presented "clear and convincing evidence that there had

been recent or past acts of harassment by Mr. Thomas" and dismissed both TROs.

*Id.* at 47-48.

Unfortunately, the May 11, 2004 dismissal did not end Plaintiff's and

Chung's dispute.  Plaintiff asked Hawaii County prosecutors to file charges

against Chung for allegedly violating Plaintiff's rights to privacy, illegally

obtaining his credit card information and Social Security number, and threatening

Plaintiff's family.  Pl.'s Ex. 19(c), ¶¶ 4-5.  To support his claims, Plaintiff

2

provided the prosecutors tape recordings and videotapes showing that Chung had

threatened Plaintiff's family. *Id.* ¶ 5. The prosecutors refused to file charges,

explaining that they had no reasonable belief that they could prove the case against

Chung to a standard of beyond a reasonable doubt. *Id.*; *see also* Pl.'s Exs. 6-10.

Despite Judge Moran's May 11, 2004 dismissal of the civil action,

Plaintiff learned that the State of Hawaii was considering filing a criminal charge

against him.[1] On December 20, 2004, Plaintiff met with Kimura at a police station

in Hilo and provided him information showing that the TRO against Plaintiff was

dismissed. Pl.'s Ex. 12, Pl.'s Decl. ¶¶ 3-4. Kimura also met with Jack Matsui,

who told Kimura that Judge Moran had cleared Plaintiff of the violation. Pl.'s Ex.

16, Matsui Decl. ¶ 4. Matsui gave Kimura documents showing the dismissal of

the civil action, and in response, Kimura told Matsui that they were still

investigating Chung's complaint and would consider this evidence.[2] *Id.* ¶ 6.

---

[1] Plaintiff asserts that during a November 26, 2004 hearing, an individual from the prosecutor's office stated that they were still investigating Plaintiff in conjunction with the police. Pl.'s Ex. 19(c), Pl.'s Decl. ¶ 17(a). While not articulated in either of the parties' Concise Statements, it appears that Judge Moran held another hearing with Plaintiff and Chung on November 26, 2004 in which he again stated that Plaintiff had not violated the TRO on March 26, 2004. *See* Pl.'s Ex. 19(b), Strauss Decl. ¶ 6. In general, neither party provided a clear time line of events or explanation of Plaintiff's and Defendants' interactions prior to the criminal charge. The court therefore outlines the facts based on what dates and specific information the parties did provide.

[2] While not included in his Concise Statement, Plaintiff asserts in his Opposition that the prosecutors conducted their own investigation by interviewing Chung "on at least one and

(continued...)

3

Despite Plaintiff providing Kimura information showing that the TRO against him was dismissed, on January 26, 2005, the State of Hawaii filed a criminal charge, signed by Malate, alleging that:

> On or about the 26th day of March, 2004, in South Hilo, County and State of Hawaii, JACK THOMAS did knowingly or intentionally violate a restraining order or injunction issued pursuant to section 603-10.5, Hawaii Revised Statutes, by going to MALCOLM CHUNG's place of employment, thereby committing the offense of Violation of A Restraining Order Against Harassment, in violation of Section 604-10.5, Hawaii Revised Statutes, as amended.

Defs.' Ex. 4.  The Complaint listed Plaintiff's address, Social Security number, and date of birth.  *Id.*

In deciding to charge Plaintiff with this offense, Malate reviewed the TRO and police reports, which included interviews of witnesses and Plaintiff, and which indicated that witnesses saw Plaintiff go to Chung's place of employment during a time when Chung's TRO was in effect.[3]  Malate Decl. ¶¶ 4-7.  To file a

---

[2](...continued)
probably two occasions."  Pl.'s Opp'n 8.  The court does not consider this assertion because the exhibit cited by Plaintiff's Opposition does not support this proposition or even contain the pages referenced.  Even if the court did consider this fact, however, it would not alter the court's conclusion below that Kimura and Malate are entitled to absolute immunity.

[3]  Plaintiff suggests that the case file also included information he provided to Defendants showing that the civil action concerning Chung's TRO was dismissed, and asserts that he provided Malate "extensive documentation proving that the case had already been adjudicated in Plaintiff's favor."  Pl.'s Ex. 19(c), ¶¶ 16(a), 19(a).  The evidence presented and cited in Plaintiff's Declaration, Exhibit 19(c), however, shows that prior to the criminal charge, Plaintiff provided
(continued...)

complaint such as this, Malate applies a probable cause standard, *see* Pl.'s Ex. 4, at 8, as opposed to the County policy requiring sufficient admissible evidence to prove guilt beyond a reasonable doubt.  *See* Defs.' Ex. 5 ("In Hawaii County, no criminal charge will be brought against an individual until such time the Prosecutor through his deputies believes there is sufficient, competent, admissible evidence to prove guilt beyond a reasonable doubt.").

Plaintiff was never arrested or taken into custody as a result of the criminal charge.  Defs.' Ex. 7, at 19.  Plaintiff and his attorney for the Chung TRO matter, Steven Strauss, continued to provide Defendants information from the civil TRO action showing that it was adjudicated in Plaintiff's favor.  *See* Pl.'s Ex. 19(b), Strauss Decl. ¶¶ 4-7; Pl.'s Ex. 12, Pl.'s Decl. ¶¶ 7-8.  Subsequently, the County made an oral motion to dismiss the criminal charge for insufficient evidence, which was granted on April 21, 2005.[4]  Pl.'s Ex. 4, at 7; Pl.'s Ex. 11.

---

[3](...continued)
this information to Kimura, not Malate.  While some evidence indicates that this information was eventually provided to Malate as well, *see* Pl.'s Ex. 19(b), Strauss Decl. ¶ 3; Pl.'s Ex. 12, Pl.'s Decl. ¶ 5, it remains unanswered whether Malate received any materials prior to filing the criminal charge.  In any event, even if Malate had this information before he decided to file the criminal charge, as explained below, Malate's decision to file charges is subject to absolute immunity.

[4]  Plaintiff's counsel explained during the hearing on this matter that the criminal action was transferred from Malate to Shaunda Liu, who decided to dismiss this case after she spoke with Chung.

5

**B.    Procedural Background**

On April 12, 2007, Plaintiff filed his Complaint in the State of Hawaii

Circuit Court of the Third Circuit, alleging claims pursuant to 42 U.S.C. § 1983

for violation of Plaintiff's First, Fourth, Fifth, Eighth, Ninth, and Fourteenth

Amendment rights, and state law claims of malicious prosecution and abuse of

process.  On May 15, 2007, Defendants removed the case to this court.

On October 9, 2007, Defendants moved for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c) and to dismiss for

failure to state a claim under Rule 12(b)(6) on the basis that they have no liability

under 42 U.S.C. § 1983 because both Kimura and Malate have absolute immunity

for their actions taken in this case.  On December 10, 2007, the court denied

Defendants' Motion without prejudice so that the parties could present a fuller

record to allow the court to rule on Defendants' claims of absolute immunity.

On August 13, 2008, Defendants filed the present Motion for

Summary Judgment.  On September 11, 2008, Plaintiff filed his Opposition,[5] and

Defendants filed their Reply on September 22, 2008.  A hearing was held on

September 29, 2008.

---

[5]  The court struck Plaintiff's Concise State of Facts filed on September 11, 2008 for
failure to comply with Local Rules.  Plaintiff filed an Amended Concise Statement on September
16, 2008.

## II.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (*citing Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004).  "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986) (A party cannot "rest on mere allegations or denials of his pleading" in opposing summary judgment).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## III. ANALYSIS

Defendants argue, among other things, that Plaintiff should be precluded from raising new allegations for the first time in his Opposition, and that summary judgment should be granted on Plaintiff's 42 U.S.C. § 1983 claim because Malate and Kimura are subject to absolute immunity. The court addresses these arguments in turn.

### A. Allegations Not Included in the Complaint

Plaintiff alleges for the first time in his Opposition that Defendants violated his right to privacy by including his birth date and Social Security number

8

on the criminal charge.  Defendants argue that Plaintiff cannot add new causes of action at this time because the date for motions to amend pleadings passed over nine months ago (January 11, 2008), and Plaintiff was aware of these potential causes of action at the time he filed the Complaint.

The court declines to consider new allegations raised for the first time in Plaintiff's Opposition.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006) (finding that the district court did not err in holding that the plaintiff failed to provide adequate notice of new allegations).  Specifically, Federal Rule of Civil Procedure 8(a)(2) requires that allegations in the Complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotation omitted), but Plaintiff's new allegations go well beyond those in the Complaint.  The Complaint outlines Defendants' alleged notice that the TRO had been dismissed against Plaintiff and Defendants' decision to go forward.  The Complaint does not, however, provide any notice that Plaintiff believed his rights to privacy were violated.  Further, at the hearing, Plaintiff admitted that his Complaint did not include this allegation and that he had not sought to amend the Complaint.

The court therefore finds that Plaintiff failed to provide Defendants adequate notice of these new allegations, and the court will not consider these arguments for the first time in Defendants' Motion for Summary Judgment.

## B.     Absolute Immunity

Defendants argue that Malate and Kimura are absolutely immune from suit for their alleged violations of Plaintiff's rights.  Based on the following, the court agrees.

### 1.     *Framework*

"Courts have recognized two types of immunity from suit under 42 U.S.C. § 1983: qualified immunity and absolute immunity."  *Goldstein v. City of Long Beach*, 481 F.3d 1170, 1172  (9th Cir. 2007) (*citing Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993)).  Absolute immunity protects a prosecutor from civil liability "whether or not he or she violated the civil plaintiff's constitutional rights."  *Broam v. Bogan*, 320 F.3d 1023, 1029 (9th Cir. 2003).  "A prosecutor is entitled to absolute immunity under § 1983 for conduct that is 'intimately associated with the judicial phase of the criminal process,' *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and 'occur[s] in the course of his role as an advocate for the State.'"  *Goldstein*, 481 F.3d at 1173 (*quoting Buckley*, 509 U.S. at 273) (some alteration omitted).

10

To determine whether a prosecutor is entitled to absolute immunity, the court applies a functional analysis; that is, the court looks "at the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269. "[T]he critical factor" is "the nature of the challenged policy and whether it falls within a prosecutor's judicial function or, instead, is part of a prosecutor's exercise of administrative or investigative functions." *Goldstein*, 481 F.3d at 1175 (citation and quotation signals omitted). "If the action was part of the judicial process, the prosecutor is entitled to the protection of absolute immunity." *Broam*, 320 F.3d at 1029.

For example,

prosecutors are absolutely immune from § 1983 liability for decisions to initiate a particular prosecution, to present knowingly false testimony at trial, and to suppress exculpatory evidence. Prosecutors also enjoy absolute immunity for decisions not to prosecute particular cases, and for gathering evidence to present to the trier of fact, as opposed to gathering evidence to determine whether probable cause exists to arrest. On the other hand, prosecutors do not have absolute immunity for advising police officers during the investigative phase of a criminal case, performing acts which are generally considered functions of the police, acting prior to having probable cause to arrest, or making statements to the public concerning criminal proceedings. Nor do government officials have absolute immunity for conduct involving termination, demotion and treatment of employees.

*Goldstein*, 481 F.3d at 1173-74 (citations and quotation signals omitted).

Defendants bear the burden of demonstrating that absolute immunity is warranted.

*Id.* at 1173; *see also Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001)

("[T]he official seeking absolute immunity bears the burden of showing that such

immunity is justified for the function in question.").

### 2.    *Application*

Plaintiff alleges that Malate and Kimura violated his Constitutional

rights by (1) applying a probable cause standard as to Plaintiff, but a beyond a

reasonable doubt standard as to Chung, in determining whether to institute

criminal actions against them; and (2) placing Plaintiff in double jeopardy by

charging him with a crime that a previous judge had dismissed against him.[6]

Both of these acts fall easily within Malate and Kimura's role as

advocates for the County.  Specifically, each of Defendants' alleged violations are

based on the decision to initiate a criminal action against Plaintiff.  "Initiating a

prosecution has consistently been identified as a function within the prosecutor's

role as advocate." *Milstein*, 257 F.3d at 1012.  A prosecutor is entitled to absolute

---

[6]  In addition to these violations, the Complaint recited that Plaintiff's First, Fourth, Eighth, and Ninth Amendment rights were violated.  Compl. ¶ 35.  Plaintiff's Opposition did not discuss allegations pursuant to these Constitutional amendments, and during the hearing, Plaintiff clarified that he was alleging the two Constitutional violations listed above only.

12

immunity for his "determination that the evidence was sufficiently strong to justify a probable-cause finding," *Kalina v. Fletcher*, 522 U.S. 118, 130 (1997), as well as his decision not to prosecute a particular case. *Goldstein*, 481 F.3d at 1173; *see also Roe v. City & County of S.F.*, 109 F.3d 578, 584 (9th Cir.1997) (holding that a "prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity"). Absolute immunity attaches even if the decision to file charges results from an improper motive or is made without probable cause. *See Imbler*, 424 U.S. at 410; *Buckley*, 509 U.S. at 274 n.5 ("The reason that we grant [absolute immunity] for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not."). Malate's decision to file the criminal charge goes to the essence of Defendants' prosecutorial duties and thus, Defendants are plainly afforded absolute immunity from Plaintiff's allegation.

Plaintiff's arguments for why Defendants' acts should be viewed as outside Defendants' roles as prosecutors lack merit. Plaintiff first argues that Defendants' acts were not intimately associated with the judicial phase of the criminal process because Defendants violated the County screening guidelines and various other state and federal laws. Pl.'s Opp'n 23-25. Plaintiff's argument

misses the point of absolute immunity -- absolute immunity protects a prosecutor

from civil liability "whether or not he or she violated the civil plaintiff's

constitutional rights." *Broam*, 320 F.3d at 1029.  The proper analysis focuses on

the nature of the function performed, not whether the act itself is unconstitutional.

As the Ninth Circuit has already explained, to accept Plaintiff's "logic would

totally abrogate the immunity doctrine because any allegation that an official,

acting under color of law, has deprived someone of his rights necessarily implies

that the official exceeded his authority." *Ybarra v. Reno Thunderbird Mobile*

*Home Vill.*, 723 F.2d 675, 678 (9th Cir. 1984) (citation and quotation signals

omitted).

Second, Plaintiff argues that the facts presented are similar to

*Milstein*, which found that prosecutors do not have absolute immunity where

the plaintiff alleged that district attorneys framed him for suborning perjury by

fabricating evidence, filing a false crime report, and investigating the purported

crime. *See* Pl.'s Opp'n 16.  As an initial matter, that Defendants may have

participated in any police investigation does not strip them of absolute immunity.

The court must evaluate whether *each* alleged violation of Plaintiff's rights is

subject to absolute immunity; the fact that Defendants took one act outside their

roles as prosecutors does not take away the shield of absolute immunity for all

14

subsequent acts.  *See Millstein*, 257 F.3d at 1011-1013 (performing absolute

immunity analysis separately for each of plaintiff's allegations).  Further, while it

is true that prosecutors "would be protected only by qualified immunity . . . if they

were conducting an investigation to determine whether probable cause existed,"

*Broam*, 320 F.3d at 1033, Plaintiff does not accuse Defendants of violating any of

his rights by participating in the investigation.  Rather, all of Plaintiff's allegations

involve Defendants' decision to bring charges against Plaintiff.

       In any event, *Millstein* is distinguishable from the facts presented

here.  *Millstein* found that defendants were not absolutely immune for acts they

took outside their role as prosecutors and before probable cause was established.

Specifically, the defendants were not absolutely immune for (1) convincing a

witness to testify falsely because probable cause had not yet been established,

(2) filing a false crime report because they acted as advocates by being the

complaining witnesses, or (3) investigating before the grand jury was empaneled

because they acted as detectives.  *Id.* at 1011.  In comparison, each of the alleged

violations by Defendants -- applying the wrong standard in filing a criminal

charge, and exposing Plaintiff to double jeopardy -- are all acts that fall

indisputably within Defendants' role as prosecutors.  Indeed, the acts Plaintiff

complains of here are precisely the type of activities *Milstein* expressly found

protected by absolute immunity.  *See id.* at 1011-1012 (finding that prosecutors were immune for securing grand jury indictment and securing an information and arrest warrant).  The court therefore finds that Malate and Kimura are entitled to absolute immunity for Plaintiff's alleged violations, and GRANTS summary judgment on Plaintiff's § 1983 claim against Malate and Kimura.

## C.    Remand to State Court

During the hearing, the court inquired whether Plaintiff was alleging a § 1983 claim against the County, and if so, whether Plaintiff wanted to maintain the claim if Plaintiff's § 1983 claims against Kimura and Malate were dismissed. In response, Plaintiff informed the court that he did not want to pursue the § 1983 claim against the County if his § 1983 claim against Kimura and Malate was dismissed.  Accordingly, the court finds that no federal claims remain in the action, and only Plaintiff's state law claims for malicious prosecution and abuse of process remain.  Because the court dismisses Plaintiff's federal claims, this action is REMANDED to the State of Hawaii Circuit Court of the Third Circuit.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

## IV.  <u>CONCLUSION</u>

For the reasons stated above, Defendants' Motion for Summary Judgment on Plaintiff's federal claims is GRANTED.  The court REMANDS the case to state court.   The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 1, 2008.



/s/ J. Michael Seabright
_____
J. Michael Seabright
United States District Judge

*Thomas v. County of Hawaii et al.*, Civ. No. 07-00251 JMS/LEK; Order Granting Defendants' Motion for Summary Judgment and Remanding State Law Claims